[Crim. No. 16803. In Bank. May 30, 1973.]

In re JAMES M., a Person Coming Under the Juvenile Court Law.
KENNETH E. KIRKPATRICK, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
JAMES M., Defendant and Appellant.

**COUNSEL**

Richard S. Buckley, Public Defender, John J. Gibbons, Sherman W. Smith, Jr., Laurance S. Smith and Martin Stein, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Russell Iungerich and Daniel W. McGovern, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOSK, J.—** We are called upon to determine whether "attempted assault" is a crime in the State of California. We conclude that it is not.

About 10:30 a.m. on the morning of December 7, 1971, Los Angeles Police Officer Sietz and his partner were conducting a field interview with two juveniles loitering in the area of a school. Across the street, some 35 feet away, a crowd of 75 to 100 other juveniles gathered behind a 12-foot high chain link fence enclosing the school yard. The youths taunted the officers, shouted obscenities, and threw miscellaneous items over the fence in the general direction of the officers. According to the testimony of Officer Sietz, "Most of it was small things like paper, of no consequence."

Officer Sietz then saw James M., a diminutive 13-year-old boy, climb partway up the fence, and, while hanging on, throw an opaque object about three inches in diameter. The missile struck the left front fender of the patrol car, some eight feet from the officer, causing a small dent. The officer crossed the street and climbed over the fence, at which moment, predictably, most of the youngsters scattered and ran. The officer observed James coming around a nearby building and placed him under arrest. Although the object was never found, Sietz "formed the opinion" it was a rock. When interrogated at the scene, James denied throwing a rock and said it was a piece of glass.

On the basis of these facts a petition was filed to declare James M. a ward of the court on the ground he had violated two laws defining crime. (Welf. & Inst. Code, § 602.) The particular offenses charged were assault with a deadly weapon upon the person of a police officer (Pen. Code, § 245, subd. (b)) and disturbing the peace (Pen. Code, § 415).

At the adjudication hearing, James denied throwing any substance and produced two juvenile witnesses to corroborate his story. The officer testified that he searched the area after arresting James but could not find the object which dented the fender of the patrol car. He also stated the missile hit the fender three feet off the ground and probably would have struck him in the foot or lower leg but for deflection by the patrol car.

The juvenile court dismissed the count alleging disturbing the peace because of insufficient evidence. As to the aggravated assault charge, the court resolved the conflict in the evidence and found that James had indeed thrown something at the police officer, but concluded that a violation of section 245, subdivision (b), of the Penal Code had not been established assertedly because the object missed its target. But rather than dismissing the petition or convicting James of the lesser included offense of simple assault on a peace officer (Pen. Code, §§ 240, 241), the court found James guilty of an *attempt* to commit an assault with a deadly weapon on a peace officer, and amended the petition by interlineation to so provide.

At the disposition hearing defense counsel contended that the prior finding "does not establish an offense under the Penal Code . . . . [E]ither the crime [i.e., a violation of section 245] was committed or it wasn't, and there can be no such thing as an attempted assault." The court, with no recognition of this issue, adjudged James to be a ward and placed him in the probation department day center program.

On appeal, defense counsel renews his contention there is no crime identified as "attempted assault" in California, whether simple or aggravated, and asks for a reversal with directions to dismiss the petition. The Attorney General assumes, but does not unequivocally concede, that the trial court erred as a matter of law in finding James guilty of attempt, but maintains the evidence would support a judgment finding James guilty of actual assault with a deadly weapon; accordingly, the Attorney General asks us to reverse the case for further proceedings in which the court below could assertedly find James guilty of the greater offense.

The latter suggestion is manifestly unacceptable. ■ The trial court's finding that James was guilty only of *attempted* assault with a deadly weapon constituted an implied acquittal of the charged assault itself. He could not be tried again for an offense of which he had been acquitted. ■ Protection against double jeopardy applies to juvenile offenders as well as to adults. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 13.)

We must therefore decide whether "attempted assault" is recognized and punishable as a crime in the State of California. Whether it is possible to attempt an assault has long been a source of academic discussion and a somewhat recondite topic for an exercise in legal analysis. Case law on the subject is by no means uniform. (See, e.g., affirmative: *State* v. *Wilson* (1959) 218 Ore. 575 [346 P.2d 115]; *State* v. *Herron* (1892) 12 Mont. 230 [29 P. 819]; *People* v. *O'Connell* (1891) 60 Hun. 106 [14 N.Y.S. 485]; negative: *Allen* v. *People* (1971) 175 Colo. 113 [485 P.2d 886]; *Wilson* v. *State* (1874) 53 Ga. 205; *White* v. *State* (1858) 22 Tex. 608.)

At common law an assault was defined as an attempted battery. It was said that one cannot attempt to commit an attempt, and, therefore, attempted assault was a deductive impossibility. (1 Wharton's Criminal Law and Procedure (Anderson ed. 1957) § 72, p. 154; 1 Burdick, Law of Crime (1946 ed.) § 135, p. 176; Clark & Marshall, Crimes (7th ed. 1967) § 4.07, p. 246.) A century ago one court described the matter thus: "As an assault is itself an attempt to commit a crime, an attempt to make an assault can only be an attempt to attempt to do it . . . . This is simply absurd." (*Wilson* v. *State* (1874) *supra,* 53 Ga. 205, 206.) Yet esoteric theories have been advanced to demonstrate that the concept of an attempted assault is not wholly illogical. (See Perkins, *An Analysis of Assault and Attempts to Assault* (1962) 47 Minn.L.Rev. 71 (hereinafter referred to as Perkins); Arnold, *Criminal Attempts—The Rise and Fall of an Abstraction* (1930) 40 Yale L.J. 53, 64-66.)

One such theory is based on the concept of "proximity," i.e., that a greater degree of proximity is required to commit an assault than to commit a general criminal attempt. Hence, it is reasoned, conduct which goes further than preparation, but falls short of assault, may be punished as a general criminal attempt. (Perkins, at pp. 81-82.) A second theory, apparently relied on by the trial court herein, suggests that inasmuch as an assault is defined in California as an attempt to commit battery coupled with the present ability to do so (Pen. Code, § 240), an attempted assault means, in substance, an attempt to commit a battery *without* such present ability. (See, e.g., *State* v. *Wilson* (1959) *supra,* 346 P.2d 115.)

Whether or not the foregoing theories are entirely tenable, it is apparent that the abstract concept of an attempted assault is not necessarily a logical absurdity. Yet to concede, in an academic sense, the possibility that there can be an attempted assault is not the equivalent of declaring it to be a punishable offense under the laws of this state.

Section 6 of the Penal Code declares that "No act or omission . . . is

criminal or punishable, except as prescribed or authorized by this Code" or by other statutes or ordinances. Since its first session, our Legislature has defined criminal assault as an attempt to commit a battery by one *having present ability* to do so (Stats. 1850, ch. 99, § 49, p. 234; now Pen. Code, § 240) and no offense known as attempt to assault was recognized in California at the time that statutory definition of assault was adopted.[1]

■ Under the doctrine of manifested legislative intent, an omission from a penal provision evinces a legislative purpose not to punish the omitted act. Hence, there is a clear manifestation of legislative intent under this doctrine for an attempt to commit a battery without present ability to go unpunished. (See Perkins, at p. 86.)

■ It is also an established rule of statutory contruction that particular provisions will prevail over general provisions. Therefore, the legislative intent not to punish batteries attempted without present ability prevails over the general criminal attempt provisions of section 664. It follows that to judicially find a crime in California in an attempt to commit a battery where the actor lacks the present ability to consummate the battery would be to invade the province of the Legislature by redefining the elements of the underlying crime. (See, e.g., *In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921], and cases cited.).

In addition, we foresee serious pragmatic difficulties if attempted assault were judicially established as a punishable crime. ■ Trial courts must instruct on lesser included offenses if the evidence raises questions as to whether all the elements of the charged crime are present. (*People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].) If it were a crime trial courts would be required to instruct on attempted assault in every prosecution for a crime involving any type of assault, whether simple or aggravated, when the proof of one of the elements of the underlying crime is unclear or contested. The injection of an additional issue into such trials, with attendant likelihood of confusion of the jury and unwarranted reversals, does not seem justified, particularly since the lack of seriousness of a mere attempted assault has been evidenced by consistent legislative omission since 1850 to provide for any such crime. Juries should not be required to engage in fruitless metaphysical speculation as to differing degrees of proximity between an assault and a general attempt, nor as to the logical possibility of attempting to commit any crime of assault, either simple or aggravated, the basic nature of which is an attempt in itself.

---

[1]The predecessor of Penal Code section 664, which provides generally for punishment of attempts to commit crime, was enacted in 1856. (Stats. 1856, ch. 110, § 8, p. 132.)

The judgment is reversed with directions to the trial court to dismiss the petition.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Molinari, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.